**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

CATHOLIC BENEFITS
ASSOCIATION, LCA, *et al.*

       Plaintiffs,

    v.

ERIC D. HARGAN, in his official
capacity as Acting Secretary,
Department of Health and Human
Services, *et al.*,

       Defendants.

No. 5:14-cv-00240
No. 5:14-cv-00685

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PERMANENT INJUNCTION**

**INTRODUCTION**

Plaintiffs seek a permanent injunction against regulations that no longer apply to them.  Their request should be denied as moot.  Plaintiffs are members of The Catholic Benefits Association, LCA ("CBA"), an association of Catholic employers that provides health benefits to their employees through insured group health plans or self-funded plans. They initially contended that federal regulations, which had required them to offer coverage of contraceptive services ("the Mandate"), violated the Religious Freedom Restoration Act ("RFRA") and other provisions of law.  But Plaintiffs are no longer subject to that requirement.

On October 6, 2017, in an effort to address serious religious and moral objections and finally bring the litigation surrounding the Mandate to a close, the Departments of Health and Human Services ("HHS"), Labor, and the Treasury (collectively, "the Agencies") issued interim final rules ("IFRs") that keep the Mandate in place, but exempt religious and moral objectors such as Plaintiffs from having to include contraceptive coverage in insurance plans offered to their employees.  *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 82 Fed. Reg. 47,792 (Oct. 13, 2017) (the "Religious Exemption Rule"); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 82 Fed. Reg. 47,838 (Oct. 13, 2017) (collectively, "the Rules"). Despite the issuance of the Rules, on November 1, 2017, Plaintiffs filed a Motion for Permanent Injunction and Declaratory Relief ("Pls.' Mot.") (*CBA I*, ECF No. 161; *CBA II*, ECF No. 57), seeking to convert this Court's preliminary injunctions—which enjoined the Agencies from enforcing the Mandate against CBA's Group II and Group III members— into permanent injunctions.[1]  Plaintiffs' motion should be denied as moot.

---

[1] This Court found that CBA's Group I members were not entitled to preliminary injunctive relief because they met the "religious employer" definition in the regulations and were therefore exempted from the Mandate.  The Court also found that the Catholic Insurance

A contrary conclusion should in no event rest on Plaintiffs' broad suggestion that "a future administration" might change the law.  In that event, Plaintiffs might have a new cause of action; it would not revive this one.  Any conclusion that this case continues to present a live controversy could instead be based only on the highly unusual circumstances of this case, where Plaintiffs have contended that they are uncertain whether dissolving the preliminary injunctions could expose Plaintiffs to retroactive fines and penalties.  That argument, too, is incorrect:  The Agencies have expressly concluded that requiring employers with sincerely held religious objections to provide their employees with contraceptive coverage would violate RFRA.  Accordingly, even if dissolving this Court's preliminary injunctions might otherwise expose Plaintiffs to the theoretical possibility of liability for their past failure to comply with the Mandate, the Agencies disclaim any intent or ability to take such enforcement action.  And any lingering concern Plaintiffs might have could be addressed, if necessary, with a statement in the order of dismissal explaining that the case is moot because the Agencies have disclaimed any intent to impose fines and penalties for any past noncompliance with the contraceptive coverage requirement.

The Agencies have concluded that the contraceptive-coverage mandate violates RFRA as applied to employers like Plaintiffs and have expanded the religious exemption from the Mandate through the Rules, so Plaintiffs can now qualify for the exemption.  And the Agencies never enforced the prior version of the Mandate against CBA's members or similar employers with religious objections.  Plaintiffs do not allege otherwise.  This case is moot and should be dismissed.

## BACKGROUND

The preexisting regulatory accommodations were discussed in detail in Defendants' oppositions to Plaintiffs' motions for preliminary injunction in *CBA I* and *CBA II*, and

---

Company lacked standing to sue in this case. *CBA v. Sebelius*, 24 F. Supp. 3d 1094 (W.D. Okla. 2014); *CBA v. Burwell*, 81 F. Supp. 3d 1269 (W.D. Okla. 2014).  Plaintiffs do not seek to revisit those determinations in the instant motion.

Defendants respectfully refer the Court to those filings for the relevant background of the Mandate. *See* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 4-8 (*CBA I*, ECF No. 29); Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 3-6 (*CBA II*, ECF No. 36).

In 2014, the Supreme Court held that, at least as applied to closely-held for-profit corporations with religious objections to providing contraceptive coverage, the Mandate violated RFRA. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014). The Court explained that the "contraceptive mandate substantially burden[ed] the exercise of religion" by those employers because it put them to the choice of violating their sincerely held religious beliefs or facing significant fines. *Id.* at 2757. The Court also held that the application of the Mandate to them was not the least restrictive means of achieving a compelling governmental interest, because the accommodation was a less restrictive alternative than applying the Mandate directly. *See id.* at 2779–80. The Court cautioned that it was not deciding "whether an approach of this type complies with RFRA for purposes of all religious claims." *Id.* at 2782.

Less than one week later, the Court issued an order in a case involving an employer whose objections to the Mandate could not be satisfied by use of the accommodation process. *See Wheaton Coll.* v. *Burwell*, 134 S. Ct. 2806 (2014). Wheaton College stated it sincerely believed that executing the self-certification process and submitting it to its health insurance issuer or third-party administrator made it materially complicit in providing contraceptive coverage. *Id.* at 2808. The Court accordingly identified an alternative form of accommodation for Wheaton College during the litigation: the college was to "inform[] the Secretary of Health and Human Services in writing that it is a non-profit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services," but was not required to use the self-certification form or send copies of that form to its health insurance issuers or administrators. *Id.* at 2807. This alternative form of accommodation would neither affect "the ability of [Wheaton College's] employees and students to obtain, without cost, the full range of FDA approved

contraceptives," nor preclude the government from relying on the notice it received from Wheaton College "to facilitate the provision of full contraceptive coverage under the Act." *Id.*

The Agencies responded to these litigation developments through various rulemakings. The Agencies issued a third set of IFRs to augment the regulatory accommodation process in light of the *Wheaton College* order. Coverage of Certain Preventive Services Under the Affordable Care Act, 79 Fed. Reg. 51,092 (Aug. 27, 2014). They also issued a second NPRM to extend the accommodation process to closely held for-profit entities with religious objections to contraceptive coverage in light of the decision in *Hobby Lobby*. *See* 79 Fed. Reg. at 51,118. On July 14, 2015, after receiving over 75,000 comments, the Agencies finalized both the August 2014 IFRs and the August 2014 proposed rules. *See* 80 Fed. Reg. 41,318, 41,324 (July 14, 2015).

Meanwhile, the litigation about whether the accommodation process satisfied the government's RFRA obligations toward non-profit religious entities generated a split among the federal appeals courts, and the Supreme Court granted certiorari in *Zubik v. Burwell*, Civ. Action No. 14-1418, 2016 WL 1203818 (Mar. 29, 2016), to resolve it. After oral argument, the Court asked the parties to submit supplemental briefs addressing "whether and how contraceptive coverage may be obtained by petitioners' employees through petitioners' insurance companies, but in a way that does not require any involvement of petitioners beyond their own decision to provide health insurance without contraceptive coverage to their employees." *Id*. at *2. In supplemental briefing, the Agencies acknowledged that the accommodation process for eligible organizations with insured plans could operate without any formal self-certification or written notice being submitted by eligible organizations, so long as the organization provided the insurer "any request" to exclude coverage of contraceptives. Suppl. Br. for Resp'ts at 15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016). On May 16, 2016, the Supreme Court issued a *per curiam* opinion, vacating the judgments of the courts of appeals and remanding the cases "[i]n light

of the … substantial clarification and refinement in the positions of the parties" in their supplemental briefs.  136 S. Ct. at 1560.  The Court stated that it anticipated that, on remand, the courts of appeals would "allow the parties sufficient time to resolve any outstanding issues between them."  *Id*.

The Agencies then issued a Request for Information ("RFI") seeking public comment on options for modifying the accommodation process in light of the supplemental briefing in *Zubik* and the Court's remand order.  Coverage for Contraceptive Services, 81 Fed. Reg. 47,741 (July 22, 2016).  The Agencies explained that they were using the RFI procedure because the issues addressed in the supplemental briefing in *Zubik* affect a wide variety of stakeholders, including many who were not parties to the cases before the Supreme Court.  *Id*. at 47,742-43.

In response to the RFI, the Agencies received over 54,000 public comments.  *See* FAQs About Affordable Care Act Implementation Part 36 ("FAQs") (Jan. 9, 2017).[2]  On January 9, 2017, the Agencies issued a "FAQ" document noting that, after reviewing these comments and considering various options, the Agencies could not find a way to amend the accommodation so as to satisfy objecting organizations while pursuing the Agencies' policy goals.  *See id.*  Thus, the litigation on remand remained unresolved.

On May 4, 2017, the President issued an "Executive Order Promoting Free Speech and Religious Liberty."  Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017). Regarding "Conscience Protections with Respect to Preventive-Care Mandate," that order instructed the Agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4) of title 42, United States Code."  *Id*.

"Consistent with the President's Executive Order and the Government's desire to resolve the pending litigation and prevent future litigation from similar plaintiffs," the

---

[2] Available at: https://go.usa.gov/xnWVG and https://go.usa.gov/xnWVs.

Agencies concluded that it was "appropriate to reexamine the exemption and accommodation scheme currently in place for the Mandate" and issued the IFRs on October 6, 2017.  Religious Exemption Rule, 82 Fed. Reg. 47,792; *accord* Moral Exemption Rule, 82 Fed. Reg. 47,838.  The Agencies have requested public comments on the Rules by December 5, 2017.

The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held religious beliefs, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held religious beliefs.  45 C.F.R. § 147.132(a)(2).[3]  Under the Rules, HRSA remains free to define "contraceptive services" as "contraceptive or sterilization items, procedures, or services, or related patient education or counseling, to the extent specified for purposes of § 147.130(a)(1)(iv)."  *See* 82 Fed. Reg. at 47,835; 45 C.F.R. § 147.132(c); 45 C.F.R. § 147.133(c).  As under the previous rule, exempt entities are not required to self-certify, but entities covered by ERISA are still subject to ERISA's disclosure requirements for plan exclusions or reductions in a covered service or benefit.  82 Fed. Reg. at 47,808 & n.54; *id*. at 47,804 & n.32.[4]

On October 6, 2017, HRSA updated its Guidelines to exempt entities and individuals that qualify for exemptions from the Guidelines' requirements.  Guidelines,

---

[3] The Moral Exemption Rule provides an exemption for certain non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held moral convictions, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held moral convictions.  45 C.F.R. § 147.133(a)(2).  Each rule also includes an "individual exemption" that allows a willing plan sponsor of a group health plan or a willing health insurance issuer offering group or individual health insurance coverage to provide a separate benefit package option or separate policy, certificate, or contract of insurance to an individual who objects to coverage for contraceptive services based on sincerely held religious beliefs or moral convictions.  *Id*. §§ 147.132(b), 147.133(b).

[4] The Rules also maintain the accommodation process as a voluntary mechanism to provide contraceptive availability for women covered by the plans of entities that choose to use it.  45 C.F.R. § 147.131; 26 C.F.R § 54.9815-2713A; 29 C.F.R. § 2590.715-2713A.

http://www.hrsa.gov/womens-guidelines.  Plaintiffs do not dispute that, as a result of that change, they are now exempt from the Mandate.

The new Rules are currently subject to eight legal challenges in federal courts in California, Washington, Massachusetts, Colorado, Pennsylvania, Indiana, and the District of Columbia.  The plaintiffs in Pennsylvania and California are seeking preliminary injunctions to prevent the government from enforcing the new Rules.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS MOOT

Article III of the Constitution defines the outer bounds of the constitutional jurisdiction of federal courts by restricting the exercise of judicial power only to "Cases" or "Controversies."  U.S. Const., art. III, § 2.  In part, this constitutional limitation defines "the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government."  *Flast v. Cohen*, 392 U.S. 83, 95 (1967); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  Absent an ongoing case or controversy, a case is moot and a court lacks jurisdiction.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).  As the Supreme Court has observed, "[m]ootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  *Arizonans for Official English*, 520 U.S. at 68 & n.22 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Intervening events that occur while litigation is pending may, of course, render a formerly live, ongoing controversy moot.  Those events might eliminate any ongoing injury-in-fact, *see, e.g., Spencer v. Kemna*, 523 U.S. 1, 14 (1998), or render relief unavailable because the relief sought has effectively been granted, *see Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Mills v. Green*, 159 U.S. 651, 653, 657-58 (1895).  "No matter how vehemently the parties continue to dispute the

lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (citations omitted); *see also Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (where a defendant has amended its regulations, "the issue of the validity of the old regulations is moot"). Thus, even if there is a live controversy when the case is filed, courts should refrain from deciding claims if "the requisite personal interest that must exist at the commencement of the litigation" is no longer present. *Arizonans for Official English*, 520 U.S. at 68 & n.22 (citations omitted).

The Agencies' recent decision to issue the Rules, and the Agencies' failure to enforce the prior version of the Mandate against CBA's members or similar employers with religious objections, renders Plaintiffs' claims moot because the very action Plaintiffs demand—relief from the Mandate for CBA and its members, *see* Pls.' Mot. at 16—has already issued, and any injury Plaintiffs could allege based on the absence of this relief has thus been vitiated. *See Ozinga v. Price*, 855 F.3d 730, 733 (7th Cir. 2017) (concluding "it was error for the court to enter any injunctive relief at all once the regulatory accommodation was revised to include for-profit employers like [plaintiffs]" because "[a]t that point, the case was moot").

Put another way, Plaintiffs are now in the same position they would have been in had they succeeded on their claims: CBA's members that object to providing all or a subset of contraceptive services based on sincerely held religious beliefs are exempt from the Mandate, to the extent of these entities' sincerely held religious beliefs. Accordingly, any harm Plaintiffs might have suffered as a result of the Mandate has now been obviated.

For similar reasons, Plaintiffs lack standing for prospective relief. Plaintiffs suggest that the possibility that "a future administration" might change the law keeps the case alive. Pls.' Mot. at 15. Under that theory, no challenge to agency action would ever be moot. Any notion that Plaintiffs may, in theory, face enforcement of the Mandate against them in the future can only be speculative and therefore would fall well short of the requirements

for Article III jurisdiction. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (requiring alleged injury to be "certainly impending" to establish standing); *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (to satisfy requirement imposed by Article III, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical" (citations omitted)); *see also Ozinga*, 855 F.3d at 734-34 (case was moot where for-profit employer sought prospective relief in a suit "focused solely on the exclusion of for-profit companies from the regulatory accommodation for employers with religious objections to the [M]andate" because "[o]nce the government … re-wrote the regulations to permit [employers like plaintiff] to invoke the accommodation …, the [M]andate no longer posed a prospective harm to the company").

While "voluntary cessation of a challenged practice" does not necessarily render a challenge moot, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169-70 (2000), "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 189 (quoting *United States v. Concentrated Phosphate Exp. Assn.*, 393 U.S. 199, 203 (1968)). Here, given the Agencies' view that the Mandate and accommodation violate RFRA as applied to the Plaintiffs, it is unlikely that the Agencies' actions constituting the alleged violation—enforcement of the Mandate against CBA's members—will recur.[5]

---

[5] Plaintiffs correctly note that "[t]he Departments cannot promise that [the Religious Exemption Rule] will remain unaltered after they take the public's comments into account." Pl.'s Mot. at 14. Indeed, the Agencies have not pre-judged that question. However, the Rules were issued after the Agencies received "more than 100,000 public comments" throughout six years of publishing and modifying these regulations, providing an extensive discussion about whether and by what extent to expand the religious exemption from the Mandate. 82 Fed. Reg. at 47,814. The Agencies have solicited public comments on the Rules by December 5, 2017, which the Agencies will review before issuing final regulations. In the event the Agencies modify the Religious Exemption Rule such that Plaintiffs no longer qualify for the exemption, Plaintiffs might have a new cause of action to challenge such a change. But this would not revive the instant case. *See Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1249 (10th Cir. 2009) (dismissing challenge to superseded state statutes as moot and noting that "if the plaintiffs wish to challenge the new [statutes], they must file a new complaint").

10

Additionally, where the defendant is a government agency, there is less concern about the recurrence of objectionable behavior.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) (recognizing that while there is "heavy burden" surrounding voluntary-cessation exception, government officials who have discontinued challenged practices are often able to overcome that burden).  And that is particularly true where, as here, the federal agency has affirmatively reversed the position that justified the challenged course of conduct.

## II.   PLAINTIFFS HAVE FAILED TO ESTABLISH ACTUAL OR IMMINENT LIABILITY FOR PAST NONCOMPLIANCE WITH THE MANDATE

If the Court concludes that Plaintiffs' claims are not moot, that determination could rest only on the possibility that "penalties [could be assessed] against [the Plaintiffs] for refusing to comply with the [Mandate's] requirements" prior to the issuance of the Rules.  Pls.' Mot. at 15.  That possibility is too remote to support jurisdiction.  *See Clapper*, 133 S. Ct. at 1143 (requiring alleged injury to be "certainly impending" to establish standing); *City of L.A.*, 461 U.S. at 102 (to satisfy requirement imposed by Article III, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical" (citation omitted)).  If this Court disagrees on this point, however, the concern could be addressed by an order making clear that the Agencies have disclaimed any intent to assess penalties against CBA's members for past violations of the Mandate.

If this Court finds that Plaintiffs' claims are not moot and CBA's Group II and Group III members face potential enforcement of the Mandate against them, Defendants do not oppose Plaintiffs' motion to convert this Court's preliminary injunctions enjoining the Agencies from enforcing the Mandate against CBA's Group II and Group III members, so long as all those members have a religious or moral objection to the Mandate's enforcement.  As noted in the preamble to the Religious Exemption Rule, the Agencies have concluded that "requiring certain objecting entities or individuals to choose between the Mandate, the accommodation, or penalties for noncompliance imposes a substantial

burden on religious exercise under RFRA," and the Mandate thus should not be enforced against employers with sincere religious objections to facilitating the provision of contraceptive services, to the extent of that religious objection.  82 Fed. Reg. at 47,800.

Any such injunction should be tailored, however, to enjoining the Agencies from enforcing the regulations that required contraceptive coverage prior to the Religious Exemption Rule.  As noted above, these are the only claims this Court could determine are not moot.[6]  Plaintiffs do not dispute that, as a result of the Religious Exemption Rule, they are now exempt from the Mandate.

## CONCLUSION

The Court should deny Plaintiffs' motion for permanent injunction.

---

[6] This Court deferred consideration of Plaintiffs' motion for class certification in *CBA I*, *see* ECF No. 88, until all appeal rights were exhausted on the Court's order granting a preliminary injunction, *see CBA I*, ECF No. 68.  That appeal has been dismissed.  *See CBA I*, ECF No. 162.  Defendants continue to oppose Plaintiffs' motion for class certification because the proposed class and subclasses do not demonstrate the requisite commonality and because Plaintiffs failed to demonstrate that their proposed class warrants certification under either Rule 23(b)(1) or Rule 23(b)(2).  *See* Defs.' Opp'n to Pls.' Mot. for Class Certification (*CBA I*, ECF No. 58).  Any injunction should be narrowly tailored to enjoin enforcement against CBA's Group II and Group III members that joined CBA before the new IFRs went into effect and that had not had an adverse ruling on the merits issued against them in another case involving the Mandate.

Respectfully submitted this 22nd day of November, 2017,

ETHAN P. DAVIS
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOEL McELVAIN
Assistant Director, Federal Programs Branch

*/s/ Elizabeth L. Kade*
ELIZABETH L. KADE
(D.C. Bar No. 1009679)
Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
Telephone: (202) 616-8491
Facsimile: (202) 616-8470
E-mail:  Elizabeth.L.Kade@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2017, I electronically filed the foregoing using

the Court's CM/ECF system, which sent notice of such filing to all parties.

*/s/ Elizabeth L. Kade*
ELIZABETH L. KADE