IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION LCA, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14-cv-240-R |
| v. | ) ) | and |
| AZAR, *et. al.*, | ) ) | No. 14-cv-685-R |
| Defendants. | ) ) | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS UNDER 42 U.S.C. § 1988**

**I.   Introduction**

On March 12, 2014, plaintiffs filed their initial verified complaint in this Court, seeking a permanent injunction and declaratory relief against the Departments' CASC Mandate. Four years later, on March 7, 2018, the Court agreed with Plaintiffs and found that the Departments' mandate was illegal under the Religious Freedom Restoration Act.. The Court granted Plaintiffs' motion for a permanent injunction and declaratory relief and entered final judgment in Plaintiffs' favor. Consistent with this the Court's ruling and with 42 U.S.C. § 1988, the Court directed Plaintiffs to file a motion for fees and costs no later than April 23.

Plaintiffs move for an award of their attorneys' fees and expenses incurred in this four-year case pursuant to Fed. R. Civ. Proc. 54, Local Rule 54(d)(1), and 42 U.S.C. § 1988(b). Plaintiffs seek payment of $3,334,696.50 for fees for 6,538.15 hours of work by attorneys and paralegals at Lewis Roca Rothgerber Christie LLP ("LRRC") and for $39,188.06 in non-taxable costs.

1

## II. Factual and Procedural Background

Plaintiffs rely on the pleadings and papers filed with this Court, on the papers filed in connection to the six appeals filed by the Departments from this Court's orders, and on the attached declarations of L. Martin Nussbaum, Mark Rienzi, and Michael Burrage.

The attached declarations set forth the facts in support of this motion. In brief, these declarations address the following topics:

- **Declaration of Martin Nussbaum (Exhibit A):**
  - The relevant background on LRRC's religious institutions group and the LRRC attorneys and other professionals who contributed to Plaintiffs' victory in this case;
  - The outstanding results secured in this case;
  - The scope of the effort necessary to secure these results;
  - The Departments' numerous regulatory changes and litigation tactics substantially increased the work necessary to secure a favorable outcome for the Catholic Benefits Association ("CBA") and its members.

- **Declaration of Mark Rienzi (Exhibit B):**
  - Recognition that the Departments' mandate "created an extraordinary religious liberty crisis" and "a legal problem of extraordinary complexity;"
  - Given these circumstances, the work performed by CBA's counsel was necessary to protect CBA members' interests;
  - The Departments "made important misrepresentations" that "complicated and prolonged the legal efforts necessary" to protect CBA members' interests;
  - The CBA's amicus brief "made important contributions to the favorable outcome in *Zubik v. Burwell*."
  - The LRRC's religious institutions group and the attorneys representing the CBA are recognized experts in representing religious institutions;
  - LRRC did an outstanding job advocating for the CBA and achieved outstanding results for the CBA and its members.

- **Declaration of Michael Burrage (Exhibit C):**
  - Plaintiffs' counsel achieved an extraordinary result in this case;
  - It was "prudent and efficient" for Plaintiffs' counsel to use various means to communicate with and advise CBA members on matters related to the Departments' mandate;
  - Plaintiffs' counsel efficiently used associational standing to achieve relief for over 1000 religious employers;

2

- o   Considering the complexity of this litigation and the issues involved, the hourly rates requested by LRRC are reasonable from a national perspective or in the Oklahoma City legal market;
- o   Plaintiffs' counsel "were remarkably efficient in litigating this case for around $3,500 per Association member."

### III.     Argument

It is the public policy of the United States that "a plaintiff who obtains relief in a civil rights lawsuit 'does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance.'" *City of Riverside v. Rivera,* 477 U.S. 561, 575 (1986). To further that policy, Congress has provided for the reimbursement of attorney's fees and costs to successful civil rights litigants, including those that bring claims under the Religious Freedom Restoration Act. 42 U.S.C. § 1988(b). In order to be reimbursed for attorney's fees incurred in the prosecution of civil rights cases, a plaintiff must prove that: (1) he or she was the prevailing party in the proceeding; and (2) his or her fee request is reasonable. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

### A.     Plaintiffs are the prevailing parties in this matter.

A plaintiff is considered a prevailing party if he or she "suceed[ed] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citations omitted). In other words, "a plaintiff 'prevails' when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

In this case, there is "no question" that plaintiffs have prevailed in this matter. *See*

*Robinson*, 160 F.3d at 1281. On March 7, the Court issued a permanent injunction and declaratory judgment that found that the Departments' CASC Mandate is illegal under the Religious Freedom Restoration Act as applied to CBA members, declares the CBA's and its members' legal rights, permanently protects members from at least $6.9 billion in fines, and enjoins the Defendants from enforcing these or similar regulations against the CBA and its members. ECF No. 184. The Court also entered judgment for plaintiffs. ECF No. 185. Plaintiffs' counsel have achieved outstanding results for the Catholic Benefits Association and its members. *See* Nussbaum Decl. § IV; Rienzi Decl. ¶¶ 26-27; Burrage Decl. ¶¶ 8-9, 19. As such, plaintiffs are unquestionably prevailing parties in this litigation.

      **B.**      **The Plaintiffs' requested fees and costs are reasonable.**

Because it is clear that plaintiffs have prevailed, "the only question in this case is whether plaintiffs [have] established that their fee request [is] reasonable." *Robinson*, 160 F.3d at 1281. In cases such as this one, where "the plaintiff[s] ha[ve] obtained 'excellent results,' the attorney's fees should encompass all hours reasonably expended." *Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir. 1983) (citing *Hensley*, 461 U.S. at 434-35).

The court's discretion in awarding fees is narrow. *Robinson*, 160 F.3d at 1280. Tenth Circuit precedent establishes that "when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees." *Id.*; *see also Hensley*, 461 U.S. at 429 (1983) ("a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust") (citation omitted).

4

### 1. The proposed rates are reasonable.

The U.S. Supreme Court has established the lodestar method as the appropriate means of calculating attorneys' fees. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

The lodestar amount is the presumptive fee, although it may be subject to adjustment. "When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee[.]" *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Plaintiffs have requested hourly rates for attorneys ranging from $285 to $670 per hour. *See* Nussbaum Decl. App'x I. Plaintiffs have requested hourly rates for paralegals ranging from $250 to $290. *Id.* Five members of our firm's religious institutions group are responsible for 95% of the total hours billed on this matter. They are Eric Kniffin, Bill Mahaffey, Ian Speir, Arlene Martinez (paralegal), and Martin Nussbaum. *See* Nussbaum Decl. § II. The rates for each are $440, $610, $420, $250, and $610, respectively. *See* Nussbaum Decl. App'x I. These rates are reasonable for the skill, experience, and reputation of the attorneys and paralegals who worked on this matter. Nussbaum Decl. § III.

Mark Rienzi, the President of Becket, a boutique law firm that specializes in religious liberty cases, recognizes that LLRC's Religious Institutions Group in general and Martin Nussbaum and Eric Kniffin in particular are nationally recognized experts in representing religious institutions. Rienzi Decl. ¶ 23. Rienzi also recognizes that it is rare to find attorneys outside Washington D.C. that are able to understand the complex religious liberty and

5

regulatory issues the Departments' mandate presented. *Id*. ¶ 24. Michael Burrage, a prominent Oklahoma City lawyer and former federal district court judge, agrees that the rates proposed by Plaintiffs are reasonable. Burrage Decl. ¶ 18.

### 2. The hours expended were reasonable.

The guiding principle for determining the number of hours reasonably expended on the case is that the hours requested must not be "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434. This is a difficult task in many civil rights cases, because clients are not billed for their counsel's time. In such a situation, courts must "ask what hours a reasonable attorney *would have* incurred and billed in the marketplace under similar circumstances." *Robinson*, 160 F.3d at 1281 (emphasis added). The court's task is "to *simulate the market* where a direct market determination is infeasible." *Id.* (emphasis added).

Here, the Court need not speculate as to what hours would reasonably have been billed to a client, because LRRC *did* bill the Catholic Benefits Association for the hours reported in Martin Nussbaum's declaration. Nussbaum Decl. § III. Each month, Martin Nussbaum reviewed all of the hours submitted by lawyers and paralegals on this case and exercised billing judgment in adjusting or removing billing entries that he deemed "excessive, redundant, or otherwise unnecessary." *Id*. The remaining hours were billed to the Catholic Benefits Association. *Id.* The hours billed by LRRC are, therefore, by definition "what the market will bear" for the services provided by Plaintiffs' counsel here. *See Robinson*, 160 F.3d at 1281.

Courts should also consider the complexity of the case. *Robinson*, 160 F.3d at 1281. The declarations of Michael Burrage, Mark Rienzi, and Martin Nussbaum substantiate what this Court already knows—this litigation was a long, hard-fought legal battle that took four years to reach a successful conclusion. *See* Burrage Decl. ¶¶ 10-18; Rienzi Decl. ¶¶ 16-21; Nussbaum Decl. § V.

The Tenth Circuit also encourages district courts to consider "the responses necessitated by the maneuvering of the other side." *Robinson*, 160 F.3d at 1281. As this Court is aware, and as explained in detail in the attached declarations, the Departments' decisions in trying to preserve and maintain their CASC Mandate—at a national level and before the Court—greatly expanded the efforts necessary to secure appropriate relief for Catholic Benefits Association members from the CASC Mandate. *See* Burrage Decl. ¶¶ 11-12, 16; Rienzi Decl. ¶¶ 18-22; Nussbaum Decl. § VI.

Plaintiffs also seek reimbursement for fees incurred to prepare this fee application. *Bratcher v. Bray-Doyle Independent Sch. Dist. No. 42*, 8 F.3d 772, 726 (10th Cir. 1988) ("a party may be awarded fees incurred in resolving the fee issue itself). In determining whether the time spent preparing a fee application is reasonable, "the Court should also consider the ratio of time spent litigating the merits to time spent litigating the fee request." *Sullivan v. City of Augusta*, 625 F. Supp. 2d 28, 48 (D. Me. 2009). Here, plaintiffs' counsel have expended approximately 167 hours contacting potential experts regarding the lodestar analysis, preparing Mr. Nussbaum's lengthy declaration and other documents, and researching and preparing this motion. This work related to this application for attorneys' fees and costs is less than 2.5% of the overall hours of effort.

7

### 3. The Court should not adjust this loadstar fee.

While the lodestar fee is the presumptive fee, courts are allowed to adjust the fee upward or downward after this product is calculated. *Bell v. Board of County Com'rs of Jefferson Cty.*, 451 F.3d 1097, 1101 and n.3 (10th Cir. 2006). Prior to the lodestar method of fee calculation, courts used a collection of factors to determine the amount of a fee award. Some of these factors remain as considerations for adjusting the lodestar fee. The twelve factors are:

1. The time and labor required for the case
2. The novelty and difficulty of the questions involved
3. The skill required to perform the legal service properly
4. The preclusion of other employment by the attorney due to the case
5. The customary fee charged
6. Whether the fee is fixed or contingent
7. Time limitations imposed by the client or the circumstances
8. The amount involved and the results obtained
9. The experience, reputation, and ability of the attorneys
10. The undesirability of the case
11. The nature and length of the professional relationship with the client
12. Fee awards in similar cases

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 n.7 (1986).

Because the declarants, Prof. Rienzi, Michael Burrage, and Martin Nussbaum discuss these factors throughout their respective declarations, we will not repeat that discussion here. *See generally* Rienzi Decl., Burrage Decl., Nussbaum Decl.

Of these factors, the Supreme Court has said that the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained in the litigation have been subsumed in the lodestar approach and cannot serve as an independent basis for increasing the lodestar amount. *Id.* at 565 (*citing Blum v.*

8

*Stenson*, 465 U.S. 886 (1984)). Modifications to the lodestar amount are proper only in rare and exceptional cases, supported by specific evidence on the record and detailed findings by the lower court. *Id.* "In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee. . . ." *Id.* at 566.

There are no factors that militate for a downward adjustment here. Plaintiffs' request for attorneys' fees is based on reasonable rates and deductions from the total number of hours attorneys have invested in this case. Nussbaum Decl. § III.

Plaintiffs request that the Court approve the presumptive lodestar fee calculated using the requested rates and hours, which are described above and summarized in Martin Nussbaum's declaration at Appendix I.

### 4. The costs incurred were reasonable.

Costs of the litigation are generally allowed in a civil rights case, with a few restrictions. Out-of-pocket costs are allowed if they would normally be charged to a paying client. *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997). Costs may include photocopying, mileage, meals, and postage as long as they are separately charged to the client. *Id*.

Just like the hours billed, the clients in this case were actually charged the costs that are claimed. Nussbaum Decl. § VII. These charges are typically billed to clients and plaintiffs' attorneys followed that practice in this case. *Id*. The requested costs are reasonable for a case of this size and length. Burrage Decl. ¶ 19. The Court should award Plaintiffs $39,188.06 in non-taxable costs.

Plaintiffs have excluded from this request $2,398.90 in costs that have been separately requested in its Bill of Costs under 28 U.S.C. § 1920. To the extent the Court or the Clerk determines that any of the costs requested in the Bill of Costs are non-taxable, Plaintiffs respectfully request that such non-taxable costs be awarded as expenses taxed as attorney fees pursuant to 42 U.S.C. § 1988(b). *See Brown v. Gray*, 227 F.3d 1278, 1297-98 (10th Cir. 2000) (instructing district court on remand to consider whether costs denied under 28 U.S.C. § 1920 should be awarded as attorney's fees under §1988); *see also Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) ("Although Bee listed these expenses as costs rather than attorney's fees, his categorization of the items is not dispositive of their recoverability").

## CONCLUSION

Based on the foregoing, plaintiffs request the award of $3,334,696.50 for reasonable fees and for $47,021.87 for reasonable expenses and costs.

>Respectfully submitted,
>
>*s/ L. Martin Nussbaum*
>L. Martin Nussbaum (Colo. Bar #15370)
>Eric N. Kniffin (Colo. Bar #48016)
>Ian S. Speir (Colo. Bar #45777)
>LEWIS ROCA ROTHGERBER CHRISTIE LLP
>90 S. Cascade Ave., Suite 1100
>Colorado Springs, CO 80903
>o:719-386-3000; f:719-386-3070
>mnussbaum@lrrc.com
>ekniffin@lrrc.com
>ispeir@lrrc.com
>*Admitted pro hac vice*
>
>J. Angela Ables (Okla. Bar #0112)
>Johnny R. Blassingame (Okla. Bar #21110)
>KERR, IRVINE, RHODES & ABLES, P.C.
>201 Robert S. Kerr Ave., Suite 600
>Oklahoma City, Oklahoma 73102
>o:405-272-9221; f:405-236-3121
>aables@kiralaw.com
>jblassingame@kiralaw.com
>
>*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

On April 21, 2018, I transmitted this to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

*s/ Eric N. Kniffin*
Eric N. Kniffin

sdg

104633562_1