IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION LCA, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14-cv-00240-R |
| v. | ) ) | and |
| AZAR, *et. al.*, | ) ) | No. 14-cv-685-R |
| Defendants. | ) ) | |

# DECLARATION OF MARK RIENZI

1. My name is Mark Rienzi. I am over the age of 18 and have personal knowledge of all of the contents of this declaration.

## I. PERSONAL BACKGROUND

2. I am the President of the Becket Fund for Religious Liberty, a non-profit, non-partisan religious liberty law firm based in Washington D.C. dedicated to protecting the free expression of all religious traditions. We have represented clients of wide variety of different faiths and have won several important religious liberty cases at the Supreme Court including *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012) (on behalf of a Lutheran school seeking the freedom to choose its teachers) and *Holt v. Hobbs*, 135 S. Ct. 853 (2015) (on behalf of a Muslim prisoner seeking to grow a short beard for religious purposes).

3. I am also a professor of law at the the Catholic University of America, Columbus School of Law, where I teach constitutional law, religious liberty, torts, and

EXHIBIT B

evidence. I am also a visiting professor at the Harvard Law School where I teach religious liberty.

4. My academic work focuses on religious liberty and First Amendment issues. Some of my writing includes: "The Case For Religious Exemptions – Whether Religion is Special or Not," 127 Harvard L. Rev. 1395 (2014); "Substantive Due Process As a Two-Way Street: How the Court Can Reconcile Same-Sex Marriage and Religious Liberty," 68 Stanford L. Rev. Online 18 (2015)); "The Constitutional Right Not to Kill," 62 Emory Law Journal 101 (2012)); and "The Constitutional Right Not to Participate in Abortions: *Roe, Casey*, and the Fourteenth Amendment Rights of Healthcare Providers," 87 Notre Dame L. Rev. 1 (2011)).

5. I have been quoted on constitutional law issues in the *New York Times, Washington Post, Wall Street Journal*, Politico, AP, *National Review*, and other publications, and I have appeared on NPR, Fox, NBC, ABC, and other news outlets.

6. Before I came to work at Becket, I served as counsel in the Supreme Court and Appellate Practice Group at Wilmer Hale LLP in their Washington, D.C. office.

7. Before joining Wilmer Hale, I served as law clerk to the Hon. Stephen F. Williams, senior circuit judge for the U.S. Court of Appeals for the D.C. Circuit. I attended Harvard Law School, where I served as an editor of the *Harvard Law Review* and graduated with honors.

## II. FAMILIARITY WITH MANDATE LITIGATION

8. As the President of and a practicing attorney at Becket, I am intimately familiar with the litigation against the contraceptive mandate promulgated by the

Department of Health and Human Services, the Department of the Treasury, and the Department of Labor (the "Departments") under the Affordable Care Act.

9. Becket filed the first mandate lawsuit on behalf of Belmont Abbey College in November 2011. Altogether, Becket has filed 10 mandate lawsuits, including two class actions, on behalf of hundreds of religious employers.

10. Becket also maintained HHS Info Central, https://www.becketlaw.org/research-central/hhs-info-central/, a website that since 2011 has served as the central repository for updates, statistics, and documents related to litigation against the Departments' mandate. Our website has noted more than a hundred lawsuits filed against the mandate, on behalf of thousands of religious entities.

11. Becket has been before the Supreme Court on four separate occasions in litigation related to the contraceptive mandate: *Little Sisters of the Poor v. Sebelius* (emergency order, 2014); *Burwell v. Hobby Lobby* (2014); *Wheaton College v. Burwell* (emergency order, 2014); and representing Little Sisters of the Poor and other religious petitioners in *Zubik v. Burwell* (2016).

12. Additionally, I have written law review articles and other publications on the mandate. *See, e.g.*, "Fool Me Twice: Zubik v. Burwell and the Perils of Judicial Faith in Government," 2016 Cato Sup. Ct. Rev. 124 (2016), and "God and the Profits: Is There Religious Liberty for Moneymakers?," 21 Geo. Mason L. Rev. 59 (2013).

**III.    INVOLVEMENT WITH LEWIS ROCA ROTHGERBER CHRISTIE LLP.**

13. Becket's work against the mandate has given me an excellent vantage point to become familiar with the work that Lewis Roca Rothgerber Christie LLP ("LRRC")

3

attorneys have performed in representing the Catholic Benefits Association ("CBA") and CBA members in litigation against the Departments' mandate.

14. Since the mandate litigation began, in light of our clients' common interest in obtaining relief from the mandate, I have regularly conferred with Martin Nussbaum and Eric Kniffin to coordinate and update each other regarding our respective efforts in mandate litigation.

15. I have also reviewed Martin Nussbaum's declaration that he has prepared in support of the CBA's Motion for Attorneys' Fees.

## IV.   CONCLUSIONS

16. Based on all of the above, I believe that the Departments' contraception mandate created an extraordinary religious liberty crisis. I am aware of no other regulatory action by the federal government that has caused so many religious employers to file lawsuits to protect their rights of conscience and religious liberty.

17. Based on my experience as a religious liberty litigator and scholar, I believe that the Departments' contraception mandate has presented attorneys representing religious employers with a legal problem of extraordinary complexity. The litigation played out in a wide variety of jurisdictions, with a wide range of statutory and constitutional claims, and in relation to a frequently-changing regulatory system. By the time the case reached the Supreme Court for on its most recent occasion in 2016, oral argument was presented by three different solicitors general in one hearing: Paul Clement (Solicitor General under George W. Bush and counsel to the Little Sisters of the Poor and other groups); Noel

Francisco (current Solicitor General and counsel for many Catholic dioceses); and Donald Verrilli (Solicitor General representing the Obama Administration).

18. Based on my experience litigating and overseeing mandate litigation on behalf of many Becket clients for the entirety of this dispute, I agree with Martin Nussbaum's declaration that given the unprecedented number of lawsuits brought against the mandate, it was necessary for CBA's counsel to monitor developments in other mandate lawsuits, including the varying ways the Departments described and defended their mandate in these cases, in order to adequately represent the CBA and CBA Members' interests in litigation against the Departments' mandate.

19. Based on my experience litigating and overseeing mandate litigation on behalf of Becket clients, I agree with Martin Nussbaum's declaration that the Departments made this litigation more complicated and more expensive by repeatedly changing their rules.

20. Based on my experience litigating and overseeing mandate litigation on behalf of Becket clients, I agree with Martin Nussbaum's declaration that it was necessary to monitor and study the Departments' modifications to their mandate and what the Departments said about these changes in order to adequately represent the CBA's and CBA Members' legal interests.

21. Based on my experience litigating and overseeing mandate litigation on behalf of Becket clients, I agree with Martin Nussbaum's declaration that the Departments' mandate created legal problems of unusual complexity for religious employers. As reflected in the CBA's verified complaints, the Departments' mandate raises important

5

legal issues under the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedure Act, among others.

22. Based on my experience litigating and overseeing mandate litigation on behalf of Becket clients, I agree with Martin Nussbaum's declaration that the Departments made important misrepresentations in the process of defending their mandate in court and that these misrepresentations complicated and prolonged the legal efforts necessary to protect religious employers against the Departments' mandate. As noted above, I published an article in the Cato Supreme Court Review that addressed the way that the Departments misrepresented their authority to implement their mandate.

23. Based on my knowledge and experience of this specialized area of law and its practitioners, and from my knowledge of, and experience with, LRRC and its attorneys in particular, I can affirm that the attorneys in LRRC's Religious Institutions Group are active and highly regarded members of the relatively small community of practitioners specializing in religious freedom law. In particular, Martin Nussbaum and Eric Kniffin are nationally recognized experts and leaders in representing the unique legal needs of religious institutions.

24. Based on my experience litigating and overseeing mandate litigation on behalf of Becket clients, and on my experience as a religious liberty litigator and scholar, I believe that it takes specialized knowledge to understand the complex religious liberty and regulatory issues the Departments' mandate presented. In particular, it is rare to find outside of Washington D.C. attorneys who have a command of both religious liberty and administrative law.

25. LRRC authored two amicus briefs in support of the Little Sisters of the Poor before the Supreme Court. LRRC's amicus briefs did an outstanding job of documenting how the courts of appeals erred in holding that the mandate did not substantially burden religious exercise. In my judgment, LRRC's amicus briefs made important contributions to the favorable outcome in *Zubik v. Burwell*.

26. Based on my experience litigating and overseeing mandate litigation on behalf of Becket clients, my experience as a religious liberty litigator and scholar, my review of Martin Nussbaum's declaration, and my familiarity with the legal briefs filed in the CBA's mandate lawsuit, I believe that LRRC did an outstanding job advocating for the CBA and its members in this litigation.

27. Based on the above, I believe that LRRC achieved outstanding results for the CBA and the more than one thousand CBA members in this case.

28. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed this 20th day of April, 2018.

                                                                 s/Mark Rienzi

EXHIBIT B